**TOBACCO ROAD, a Michigan Corporation, Plaintiff,**

v.

**CITY OF NOVI, Defendant.**

No. 79–71000.

United States District Court, E. D. Michigan, S. D.

Memorandum Opinion June 21, 1979.

On Motion For New Trial March 12, 1980.

Michael L. Stefani, Frank & Stefani, Troy, Mich., for plaintiff.

David M. Fried, Monica F. Linkner, Lampert, Fried & Levitt, P. C., Southfield, Mich., for defendant.

## MEMORANDUM OPINION

PATRICIA J. BOYLE, District Judge.

Plaintiff, Tobacco Road, Inc., a Michigan corporation, seeks declaratory and injunctive relief from the enforcement of an allegedly unconstitutional ordinance of the City of Novi, Michigan, defendant herein.

Plaintiff is operated by Bruce Hoffman and Steve Gilbert. Each has engaged in the business of operating tobacco shops for some years. On January 20, 1979, Tobacco Road leased premises in the City of Novi.

On February 20, 1979, shortly after Tobacco Road's arrival in Novi, Ordinance No. 79–84 was passed and given immediate effect. This action was then filed on April 9, 1979.

Pursuant to Rule 65(a)(2), Fed.R.Civ.P., the hearing on the preliminary injunction and the trial on the merits were consolidated. This Opinion shall constitute the findings of fact and conclusions of law required of the Court under Rule 52(a), Fed.R.Civ.P.

The Court has jurisdiction under 28 U.S.C. §§ 1331(a), 1343(3), and 42 U.S.C. § 1983. Further, plaintiff has presented an actual controversy and has met the requirement of Article III of the Constitution and

the express terms of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Testimony that plaintiff's operators felt threatened with a citation, that 30 to 40 percent of plaintiff's business was small-bowl smoking pipes, that much, if not most, of plaintiff's other stock arguably was within the ambit of the ordinance, that plaintiff leased the premises, modified the interior, and entered stock purchase contracts for a total investment of thirty-five thousand dollars ($35,000.00), and that the ordinance's being passed and given emergency effect coincided with plaintiff's moving into the city show that plaintiff's concern with prosecution is not speculative or chimerical. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In *Steffel* the Court stated:

> In the instant case, principles of federalism not only do not preclude federal intervention, they compel it. Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head. When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights. But exhaustion of state remedies is precisely what would be required if both federal injunctive and declaratory relief were unavailable in a case where no state prosecution had been commenced.

415 U.S. at 472–473, 94 S.Ct. at 1222 (citations omitted).

Thus, declaratory relief is appropriate.

The challenged ordinance is entitled the "Paraphernalia Ordinance of the City of Novi." In pertinent part, Section 3.01 of the ordinance reads:

> "It shall be unlawful for any person to sell, offer for sale, display, furnish, supply or give away any . . . cocaine spoon, marijuana pipe, hashish pipe, or

any other instrument, implement or device which is primarily adapted or designed for the administration or use of any controlled substance as enumerated in Schedules 1–5, Chapter 2, 1971 PA 196, as amended, (commonly known as the Controlled Substances Act of 1971)." [1]

Section 2.01 of the ordinance is entitled *"Definitions."* It defines unlawful items for purposes of the ordinance and for this litigation as follows:

> "(1) 'Cocaine spoon': A spoon with a bowl so small that the primary use for which it is reasonably adapted or designed is to hold or administer cocaine, and which is so small as to be unsuited for the typical, lawful uses of a spoon. A cocaine spoon may or may not be merchandised on a chain and may or may not be labeled as a 'cocaine' spoon or 'coke' spoon.

> "(2) 'Controlled substance': Any drug, substance, or immediate precursor enumerated in Schedules 1–5, Chapter 2, 1971 PA 196, as amended (commonly known as the Controlled Substances Act of 1971).

> "(3) 'Marijuana or hashish pipe': A pipe characterized by a bowl which is so small that the primary use for which it is reasonably adapted or designed is the smoking of marijuana or hashish, rather than lawful smoking tobacco, and which may or may not be equipped with a screen.

> "(4) 'Paraphernalia': An empty gelatin capsule, hypodermic syringe or needle, cocaine spoon, marijuana pipe, hashish pipe, or any other instrument, implement, or device which is primarily adapted or designed for the administration or use of any controlled substance."

Section 4.01 of the ordinance provides that "each day of the violation shall be considered a separate offense" and penalizes each violation with up to 90 days imprisonment, or a five hundred dollar ($500.00) fine, or both.

---

1. Plaintiff stipulated that it does not challenge the portion of the ordinance precluding sale, distribution, or display of any empty gelatin capsule or hypodermic syringe or needle.

The ordinance further provides:

"Section 5.01. *Construction; Severability.*

It is the legislative intent that all provisions and sections, clauses and sentences of the Ordinance be liberally construed, and should any provision, section, clause or sentence be held unconstitutional or invalid, such holding shall not be construed as affecting the validity of any of the remaining provisions, sections, clauses or sentences, it being the intent that this Ordinance shall stand notwithstanding the validity of any provision, section, clause or sentence."

Plaintiff contends that the ordinance violates the prohibition against cruel and unusual punishment of the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Commerce Clause, and the First Amendment. Plaintiff also contends that the ordinance is so vague and overbroad as to violate the Due Process Clause of the Fourteenth Amendment.

### Cruel and Unusual Punishment

Plaintiff asserts that the ordinance violates the Eighth Amendment prohibition against cruel and unusual punishment made applicable to the States by the Fourteenth Amendment because other jurisdictions impose either no sanctions, or lesser sanctions, for similar behavior and because the ordinance permits each day of violation to be considered as a separate offense.

▮ The Eighth Amendment does not require uniformity of sanctions, nor does it preclude the legislative determination that succeeding days of violation will be considered a separate crime. The fixing of punishment is a legislative function with which the Court will interfere only where the punishment prescribed is manifestly cruel and unusual or grossly disproportionate to the offense. *Kasper v. Brittain,* 245 F.2d 92 (6th Cir. 1957), *cert. denied,* 355

U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); *Kreiling v. Field,* 431 F.2d 502 (9th Cir. 1970). *See also, Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

▮ While the ordinance apparently is intended to punish each day as a separate offense, rather than to punish a continuing course of conduct, *cf., United States v. Jones,* 533 F.2d 1387 (6th Cir. 1976), *cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977) (question whether continuing offense exists is one of statutory construction), the potential punishment is neither so "arbitrary" nor "severe" as to constitute cruel and unusual punishment.[2]

### Equal Protection

Plaintiff argues that the ordinance violates the Equal Protection Clause of the Fourteenth Amendment in that it is directed to retailers who sell, display, or distribute the proscribed items and exempts manufacturers, medical personnel, and other described classifications "in the normal lawful course of their respective businesses or professions."

▮ Where a statute has an impact on a fundamental interest, such as voting, *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), or involves a suspect classification, such as race, *Regents of the University of California v. Bakke,* 436 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), the Court must carefully scrutinize the legislation to determine whether the state has a compelling interest in the end to be attained and whether the means used are closely congruent to the ends sought. *See e. g., In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973).

▮ Where, as here, neither a fundamental right nor a suspect classification is involved, traditional equal protection analysis is the standard of review. Thus, as the Supreme Court recently stated in *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976):

---

**2.** "[T]he very words 'cruel and unusual punishments' imply condemnation of the arbitrary infliction of severe punishments." *Furman v.*

*Georgia,* 408 U.S. 238, 274, 92 S.Ct. 2726, 2744, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring).

Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. . . . In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.

■ The defendant's authority to regulate the administration, sale, prescription, and use of controlled substances in the interest of the public health and welfare " 'is too firmly established to be successfully called in question.' " *Robinson v. California*, 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962) (citation omitted). Moreover, federal courts "are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma*, 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973).

■ The City's preclusion of retail sale, display, or distribution of the described items cannot here be said to be without any reasonable relationship to this manifestly legitimate state interest. While other means of regulating the use of controlled substances might be wiser, or more effective, or more rationally related to that purpose, this Court's authority does not extend to evaluating the wisdom or soundness of such judgments.

Accordingly, the Court holds plaintiff's equal protection argument to be without merit.

### The Commerce Clause

Plaintiff also asserts that the ordinance is inconsistent with the Commerce Clause of the Constitution. Article I, Section 8, Clause 3. The Court is urged to measure the ordinance against the standard found in the Supreme Court decision of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), wherein a unanimous Court adopted the following statement of law:

Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443 [80 S.Ct. 813, 816, 4 L.Ed.2d 852]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues, *Southern Pacific Co. v. Arizona*, 325 U.S. 761 [65 S.Ct. 1515, 89 L.Ed. 1915], but more frequently it has spoken in terms of 'direct' and 'indirect' effects and burdens. See, *e. g., Shafer v. Farmers Grain Co.* [268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909], *supra.*

■ *Pike*, therefore, suggests a three-stage test: first, the state or local legislation must serve a legitimate local public interest; second, it must affect interstate commerce only incidentally, and; third, if the first two tests are met, the Court must then determine whether the legitimate local purpose justifies the law's impact on interstate commerce. *See, Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978), *reversed by*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

There is some question, however, whether any further weighing process should occur once it is determined that the legislation in question is a reasonable means of achieving a nondiscriminatory, legitimate goal. *See, e. g., Procter & Gamble Company v. City of Chicago,* 509 F.2d 69, 75 (7th Cir. 1975), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975); *Great Western United Corp. v. Kidwell, supra* at 1282 n.54. For instance, the Ninth Circuit has held that "[i]t is wholly beyond a court's limited authority under the Commerce Clause to review state legislation by balancing reasonable social welfare legislation against its incidental burden on commerce." *Construction Industry Ass'n., Sonoma County v. City of Petaluma,* 522 F.2d 897, 909 (1975). On the other hand, the Seventh Circuit has applied the *Pike* balancing test even where the challenged regulation was in the field of public health and safety, as opposed to a purely economic regulation. *Dixie Dairy Co. v. City of Chicago,* 538 F.2d 1303 (1976). Upon consideration of the above authority, and in light of the Supreme Court's recent pronouncements on the Commerce Clause, *see e. g., Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979), *City of Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), this Court is of the belief that the *Pike* balancing test is properly applied in the instant case.

### 1. Legitimate Local Purposes

Little time need be spent on this stage since the object of the ordinance—the control of drug abuse—is clearly a legitimate local concern. The goal of such an ordinance is within the City's police power to promote the general health and welfare of its inhabitants. *See, Robinson v. California, supra.*

### 2. Impact on Interstate Commerce

Plaintiff contends that enforcement of the ordinance in question would interrupt the free flow of goods into the state, since some of plaintiff's products come from out-of-state manufacturers. The Court recognizes that before it can make its assessment of the ordinance's impact on interstate commerce it must first determine whether the impact or effect is to be measured at its broadest, or at its narrowest reach.[3] At its narrowest, the actual impact on interstate commerce can only be classified as slight, for the volume of items plaintiff sells that are prohibited by the ordinance that arrive through interstate commerce has not been shown to be more than negligible compared with the total volume of items prohibited by the Novi ordinance that come into the state. Viewed at its greatest potential, however, the ordinance is of the type that, if adopted state-wide, might well result in the extinguishment of the entry of the proscribed items into the state.

Even such an absolute potential effect, nevertheless, should not be held to be more than "incidental" for the purposes of commerce clause analysis. In *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), where the Court acknowledged the right of a state to regulate obscene publications, the Court addressed a commerce clause argument by stating, in dictum, that "[o]bscene material may be validly regulated by a State in the exercise of its traditional local power to protect the general welfare of its population despite some possible *incidental effect* on the flow of such materials across state lines." *Id.* at 32–33 n.13, 93 S.Ct. at 2619 n.13 (emphasis added). It seems likely that this dictum should be taken to mean that where the object of evenhanded local regulation is the general welfare of the population then whatever effect it may have upon the flow of interstate commerce is generally found to be incidental or indirect. *See,* L. Tribe, American Constitutional Law 340 (1978).

Accordingly, since the Novi ordinance "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only inci-

---

**3.** It is clear that the challenged ordinance regulates evenhandedly, without discriminating "against interstate commerce either on its face or in practical effect." *Hughes v. Oklahoma, supra* at 441 U.S. 336, 99 S.Ct. 1736.

dental," the final step under *Pike* is to determine whether "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc., supra* 397 U.S. at 142, 90 S.Ct. at 847. If the burden imposed is not clearly excessive, the ordinance will be upheld.

3. Balancing the Burden and the Benefits

Were this a case wherein the plaintiff had demonstrated that the challenged ordinance *discriminated* against interstate commerce, it is now clear that the burden would fall on the City "to justify it both in terms of the local benefits flowing from the [ordinance] and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977).[4] In the instant case, however, a more relaxed standard of judicial scrutiny seems appropriate.

In *Procter & Gamble Company, supra* at 76, the district court was held to have erred where it decided the *Pike* balancing stage "as if it was an ordinary factual dispute over a technical matter that should be decided without the benefit of a presumption." Instead, the court ruled that a presumption was needed.

It is our view, however, that if the burden on interstate commerce is slight, and the area of legislation is one that is properly of local concern, the means chosen to accomplish this end should be deemed reasonably effective unless the party attacking the legislation demon-

strates the contrary by clear and convincing proof. If it is determined that this presumption should be applied, no further balancing need be undertaken. The end has already been deemed legitimate and the burden on interstate commerce slight. If the legislation is a reasonable means to that end it is constitutional.

*Id.* at 76 (footnote omitted).

Therefore, since the Court has previously concluded that this ordinance only incidentally burdens interstate commerce and the objective is legitimate, the Court will accept the City's determination that the ordinance is a reasonable means of protecting the public welfare unless it finds that the plaintiff has presented clear and convincing proof to the contrary. *Id.* at 80.

 The Court's finding under its equal protection analysis that the challenged ordinance is reasonably designed to deal with a most vital local concern sufficiently resolves this determination. Thus, no separate analysis is necessary. Put simply, plaintiff has failed to show that "the burden imposed on . . . commerce is clearly excessive in relation to the putative local benefits." *Pike, supra* 397 U.S. at 142, 90 S.Ct. at 847.

Accordingly, the ordinance here in question is not violative of the Commerce Clause.[5]

*The First Amendment*

 Plaintiff's conclusion that Ordinance No. 79–84 violates the First Amendment is based on an assertion that the ordinance invalidates commercial speech. Commercial speech, to be sure, is entitled to

4. In effect, then, the "third stage" balancing process may require greater justification for the ordinance on commerce clause grounds than is necessary to overcome a challenge on equal protection or due process grounds, at least where the regulation is discriminatory. *See, Great Western United Corp., supra* at 1285 n.58.

Although *Great Western* notes only the distinction between commerce clause and due process challenges, since the analyses of due process and equal protection are closely related, *see, Patch Enterprises, Inc. v. McCall,* 447 F.Supp. 1075, 1080 (M.D.Fla.1978), the distinc-

tion would appear to hold for equal protection challenges as well.

5. For what the Court considers to be cases in which an analogous exercise of the state police power withstood commerce clause attacks see *Upholstered Furniture v. California Bureau of Home Furnishings,* 442 F.Supp. 565 (E.D.Cal. 1977) (three-judge court) (California statute requiring upholstered furniture to be "fire retardant"), and *Cohen v. Bredehoeft,* 290 F.Supp. 1001 (S.D.Tex.1968), aff'd, 402 F.2d 61 (5th Cir. 1968), cert. denied, 393 U.S. 1086, 89 S.Ct. 873, 21 L.Ed.2d 779 (1969) (city ordinance prohibiting presence of any fireworks within the city).

First Amendment protection, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), but the short answer to plaintiff's claim is that the challenged ordinance is not directed to speech, commercial or otherwise. Rather, the ordinance prohibits the "display" of the described items, and for reasons already discussed, the prohibition is rationally related to a legitimate state purpose.

Hence, the First Amendment challenge is without merit.

### Due Process

Plaintiff finally contends that the ordinance is so vague and overbroad as to be violative of the Due Process Clause of the Fourteenth Amendment.[6]

█ Plaintiff first asserts that the ordinance here is violative of due process in that it does not require that the retail seller have the intent to sell the specified items to persons having the intent to use them in an unlawful manner. The prohibition in the ordinance, however, does not extend to whatever actual use is made of the prohibited items. Rather, as will be discussed, it prohibits items on the basis of ascertainable characteristics. Indeed, any attempt to penalize a seller solely on the basis of whatever use to which his goods are put would raise the issue of unconstitutional vagueness, since the seller here could not be expected to know the habits of drug users which are generally hidden from the public view.

█ On the other hand, plaintiff has not argued that the ordinance is unconstitutional for failing to require criminal scienter, or

even knowledge, that the items offered for sale are prohibited by the ordinance.[7] Accordingly, it is not before the Court whether or not the ordinance is *malum in se* or *malum prohibitum.* See, *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Even if such an issue were raised, the possibility that a state court interpretation of the Novi ordinance might alter the constitutional issue presented by such a question would likely require the Court to invoke the doctrine of abstention. Abstention may be particularly appropriate where "a challenge is made to the state statute as applied, rather than upon its face, since the reach of an uncertain state statute might, in that circumstance, be more susceptible of a limiting or clarifying construction that would avoid the federal constitutional question." *Steffel v. Thompson, supra* 415 U.S. at 474–475 n.21, 94 S.Ct. at 1223 n.21.[8]

Plaintiff next asserts that the definitions of "marijuana or hashish pipes" and "cocaine spoons" are constitutionally deficient. It is also argued that the definition of other "paraphernalia" is so vague that plaintiff cannot determine what conduct will violate the ordinance.

Plaintiff's contentions must be viewed in the context of whether the statute may be constitutionally applied to "business people of ordinary intelligence" in the plaintiff's position. In *McGowan v. Maryland,* 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961), the Court rejected a vagueness challenge to a statute exempting retail sales of " 'merchandise essential to, or customarily sold at, or incidental to, the operation of' bathing beaches, amusement parks et cetera" from the coverage of the Sunday closing laws. The Court stated:

---

**6.** Plaintiff presented no overbreadth argument save for that incorporated in its challenge to the ordinance as an unreasonable exercise of the state police power.

**7.** In fact, the plaintiff's void for vagueness argument is premised, in part, on the assumption that the ordinance creates a *malum prohibitum* offense and, as such, must be more exact than *malum in se* legislation.

**8.** The issue of abstention was raised only in defendant's answer to the show cause order on the preliminary injunction and was never briefed. The Court after deliberation has rejected the possibility of abstaining on the issues decided in this Opinion, since it does not appear that a decision by a state court as to state law issues would materially alter the federal constitutional questions presented by the threatened application of the ordinance. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

We believe that business people of ordinary intelligence in the position of appellants' employer would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county.

*Id.* (citation omitted).

The instant challenge must also be limited to the ordinance as applied, rather than on its face. The traditional rules governing constitutional adjudication hold "that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional," *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960), unless the challenged regulation restricts or burdens First Amendment rights, or comes within another recognized exception to the general principle, *Broadrick v. Oklahoma, supra* 413 U.S. at 611, 93 S.Ct. at 2915.

Cases such as *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948), unlike the situation here, hold "the criminal provision is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Parker v. Levy,* 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974) (citation omitted); *see also, United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975). That the ordinance here proscribes a definite course of conduct—the distribution of cocaine spoons, marijuana or hashish pipes, and narcotics paraphernalia— is sufficient to require the Court to deal with the ordinance as applied to plaintiff in this case.

Therefore, plaintiff's vagueness attack will be considered solely in relation to whether the ordinance sufficiently warns plaintiff retailer of what contemplated conduct it proscribes.

Due process requires that a criminal ordinance must give a person of average intelligence fair notice that his contemplated conduct is forbidden by the legislation, *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954), and must be narrowly drawn so as not to encourage arbitrary arrests, *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940). Certainty in draftsmanship is not required. The test is one of reasonableness; that is, whether the statute presents "ascertainable standards of guilt." *Winters v. People of New York, supra* 333 U.S. at 515, 68 S.Ct. at 670 (1948).

Thus, as the Court stated in *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947):

> That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. . . . [T]he Constitution does not require impossible standards.

As defined in the challenged ordinance, the terms *marijuana or hashish pipe, cocaine spoon,* and *paraphernalia* are sufficiently definite to provide the plaintiff with fair notice of what items cannot be sold, displayed, or otherwise distributed.

All the challenged definitions make use of design characteristics to delineate the proscribed items. A *cocaine spoon* is a spoon "with a bowl so small that *the primary use for which it is reasonably adopted or designed* is to hold or administer cocaine." A *marijuana or hashish pipe* is "a pipe characterized by a bowl which is so small that *the primary use for which it is reasonably adapted or designed* is the smoking of marijuana or hashish." *Paraphernalia* is defined as "any other instrument, implement, or device *which is primarily adapted or designed* for the administration or use of any controlled substance."

In construing a new statute on the issue of vagueness, courts have traditionally looked to other law for interpretation of terms. *See e. g., Winters v. New York, supra.* The Court has not found other Michigan cases construing the term *paraphernalia*, although other jurisdictions have construed the term as meaning miscellaneous articles or belongings used in conjunction with another unlawful activity. *People v. Watkins*, 126 Cal.App.2d 199, 271 P.2d 641 (1954). *Primarily*, while also not having been defined by Michigan courts, has been said by the Supreme Court to mean "principally," "of first importance," "essentially," or "fundamentally." *Brennan v. Harrison County, Mississippi*, 505 F.2d 901, 903 (5th Cir. 1975) (citations omitted).

The words *adapted* and *designed* do have definition in Michigan case law. *Adapted* means "capable of being used" for the specified purpose, *designed* means "contrived" for such purpose. *People v. Dorrington*, 221 Mich. 571, 191 N.W. 831 (1923); *People v. Murphy*, 28 Mich.App. 150, 157, 184 N.W.2d 256 (1970). Thus, the ordinance refers to spoons, pipes, or other items used in conjunction with controlled substances where the items are principally capable of being used for, or principally designed for, that purpose. The definitions of *cocaine spoon* and *marijuana or hashish pipe* are further crystallized in that both refer to the physical dimensions of the items and exclude those items designed for typical, lawful uses.

Plaintiff presented testimony of two witnesses who had been in the tobacco business for 18 and 20 years respectively. Both witnesses testified that "small bowl" pipes could be and were used for tobacco smoking. When asked on cross-examination whether certain pipes in catalogues (marked defendant's Exhibits 1 and 2), entitled "Paraphernalia," of a supply company called Nalpac were or were not primarily designed for smoking tobacco, each witness repeatedly responded, "I only know they are designed for smoking." When asked whether these pipes were in the witnesses' opinion primarily adapted or designed for the smoking of marijuana, each witness

similarly responded, "I only know that they are designed for smoking." Although both witnesses testified to knowledge of the catalogue(s), neither professed to be able to evaluate whether a small-bowl pipe with a "roach clip" attached to it would be suitable for tobacco smoking, or whether metal-bowled or acrylic pipes were primarily adapted or designed for tobacco smokers.

Ralph Caplan, President of Nalpac, also testified in behalf of the plaintiff. He testified that the pipe items in the catalogues were primarily designed for "smoking" and that certain items identified as "roach clips" which had been designed by him were for "smoking use." He further testified that he did not know the primary purpose for certain items identified in the company's catalogue as "toot" items and that the word "snow" used in connection with certain catalogue items referred to anything that is sniffed. He also testified that a box described in the catalogue as a "cannabis container" simply referred to the name of the item.

Defendant also presented two tobacconists who testified that "paraphernalia" was the trade name for accessories intended to be sold for use with controlled substances. Reviewing the Nalpac catalogues, with which each witness was familiar, both identified many pipes which they described as unsuitable for tobacco use and designed for use with controlled substances. These opinions were based on the size of the bowl, the material of the pipe, and the absence of a stem, among other factors. Each witness testified that small-bowl pipes produce a short smoking period while tobacco smokers customarily seek long-smoking pipes and that non-porous materials, such as metal, glass, and acrylic, were unsuitable for tobacco smoking since they condensed rather than absorbed the moisture generated by lengthy pipe smoking. Each witness further testified that certain items in the catalogue such as razor blades and a "coke" mirror had absolutely no use in the tobacco industry.

Charitably viewed, plaintiff's evidence was unpersuasive. Credibility is strained to its limit when two witnesses with such extensive experience in the tobacco industry are unable to see any distinguishing characteristics for smoking purposes between a wooden pipe and a glass pipe, or between a small-bowl pipe and a water pipe. The credibility of this testimony is best illustrated by the statement of one of the witnesses that a green, leafy plant appearing on a page of the catalogue containing "roach clips" looked to him like "bean sprouts."

Defendant's evidence, on the other hand, established that there are items clearly identifiable as being primarily adapted or designed for the use of controlled substances. Indeed, it is inferable that such items are clearly identified both by manufacturers and by retailers for the commercial purpose of marketing the items to be used with controlled substances.

■ That there may be items which could be used for smoking substances that are not controlled, or items, such as boxes, jewelry, pouches, and incense, which have legitimate uses does not disturb the Court's conclusion that a reasonable retailer could reasonably ascertain the standard for guilt in the ordinance—items primarily adapted or designed for the use or administration of controlled substances.[9]

■ The Court is persuaded that a reasonably ascertainable standard of conduct is presented by the ordinance. "[I]t is for [the retailer] to insure that his actions do not fall outside the legal limits." *United States v. Powell, supra* 423 U.S. at 92, 96 S.Ct. at 320. The issue here is not whether the ordinance might be unconstitutionally applied to some situations; the question is whether its terms are so vague that retailers of ordinary intelligence are deprived of fair notice that contemplated conduct is forbidden by the ordinance.

**9.** Plaintiff expresses fear that numerous common items having legitimate uses will be swept within the prohibitions of the ordinance. Such concern appears unfounded since the City would be hard pressed to gain prosecutions given many of those items' history of common, lawful usage. Further, "[t]hat there may be

Properly understood, the ordinance carefully sets forth its prohibitions in a manner constitutional as applied to this plaintiff. By requiring proof of unmistakable characteristics, the ordinance, in fact, places clear and strict limits upon persons charged with its enforcement, and upon judges and juries who ultimately must determine the appropriateness of its application.

Novi Ordinance 79–84 being constitutional as to all its challenged aspects, plaintiff's requests for injunctive and declarative relief are hereby DENIED.

An appropriate judgment will be entered.

## ON MOTION FOR NEW TRIAL

■ Plaintiff has filed a Motion For New Trial pursuant to Fed.R.Civ.P. 59(a) alleging that the prior judgment of the Court is based upon manifest errors of law and fact. The Court has reviewed Plaintiff's Brief and Affidavits, Supplemental Brief and Second Supplemental Brief and Defendant's Replies and has determined that Plaintiff has failed to demonstrate manifest error of law or fact requiring the granting of the relief request.

Plaintiff sets forth four grounds of alleged manifest error, relating to the Commerce Clause, the Equal Protection holding, the symbolic speech holding (the First Amendment Claim), and the Fourteenth Amendment due process issue. The Court declines to grant the Motion without further comment as to the Equal Protection claim and the symbolic speech claim, finding no manifest error of law or fact or necessity for additional testimony which requires the requested relief.

As to the Commerce Clause issue, the Court declines to find manifest error for the following reasons:

marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls" is insufficient reason to hold the ordinance void for vagueness. *United States v. Petrillo, supra* 332 U.S. at 7, 67 S.Ct. at 1541. Finally, plaintiff does not sell many of the items it uses to illustrate *its* argument.

Plaintiff has presented no authority for the proposition that, on these facts and absent an additional showing by Plaintiff of burden on interstate commerce or a permissible inference of the same which can be drawn from the record, *see Dixie Dairy Co. v. City of Chicago*, 538 F.2d 1303, 1309 (7th Cir. 1976), *cert. den.* 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612 (1976), the Court is obligated to consider whether the ordinance does in fact operate to reduce drug abuse or to consider whether the City could accomplish the same objective by means less burdensome on interstate commerce. The balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), has been applied to conclude that the ordinance regulates evenhandedly and promotes a legitimate local interest and its effect on commerce is merely incidental.

There was no other evidence offered by Plaintiff and no basis offered by the record to draw any inference regarding an excessive impact on interstate commerce or any reasonably available alternatives. Thus, the case is distinguishable from *Dixie* where "notwithstanding the paucity of direct evidence on this subject", *Dixie Dairy Co. v. City of Chicago, id.* at 1309, the Court could infer an excessive impact on interstate commerce.

While *Pike* applies by its terms to regulation which regulates evenhandedly, it is clear that a basis must appear for an inference that the statute discriminates against or excessively burdens interstate commerce,

> [if not] on its face [then] in practical effect . . . [and] the burden to show discrimination rests on the party challenging the validity of the statute, but "[w]hen discrimination against commerce . . . is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake."

*Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979) *quoting from Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977).

Whether, on facts such as these, the appropriate weight to be given a regulation in the field of health and safety is viewed as a "presumption", *Procter & Gamble Co. v. City of Chicago*, 509 F.2d 69, 76 (7th Cir.) *cert. denied* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975), or "appropriate additional weight", *Dixie Dairy Co. v. City of Chicago, id.* at 1308, and whether Plaintiff's burden is clear and convincing or some lesser standard, Plaintiff failed to come forward with evidence or a record basis for an inference that a burden is imposed on interstate commerce which is excessive, vis-a-vis the determined legitimate local interest. Plaintiff failed to meet this burden. Thus, consideration of the third step of the *Pike* analysis, that is whether the ordinance is justified in terms of the local benefits flowing from it and "the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake," *Hunt v. Washington Apple Advertising Commission, supra*, was simply not put in issue on this record.

In short, it is unnecessary for the Court, on this record, to weigh further the legitimacy of the local interest and any alternative means to accomplish it.

Further, the Court cannot accept the affidavit of Plaintiff's former counsel that he was left with the impression that the Court wished to receive evidence only on the vagueness issue as requiring the relief requested by Plaintiff. No restrictions on evidence were set forth, and briefs on the commerce clause issue (among others) were specifically requested by the Court itself. Plaintiff's presentation of the commerce clause issue was made with full knowledge of the issue involved, and the court declines now to permit Plaintiff to reopen and relitigate this issue with new counsel, *c. f. Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co.*, 73 F.R.D. 16, 20 (D.C.Del.1976). Moreover, Plaintiff's present counsel sets forth no more than a conclusory statement that, if granted a new trial, Plaintiff intends to present evidence on the reasonable

effectiveness of the ordinance. This is insufficient to incline the Court to conclude that reopening the proofs on this issue could lead to a different result.

While the Court has here specifically treated the Commerce Clause issue out of deference for the vigor with which movant has advanced it, it is perhaps appropriate to note that, given the holding of the Court that the City may lawfully punish as criminal the sale of described items, the Court has some reservations that the Commerce Clause is even properly in issue.

The Commerce Clause argument amounts to an assertion in this context that certain items, primarily designed for use with controlled substances, the sale of which is criminally punishable, can flow freely in commerce and that the state may not lawfully restrict their flow unless it demonstrates that there are less restrictive alternate means available. To state the proposition with its analogy to guns or heroin is to illustrate the Court's skepticism that having resolved the due process claims there is in fact a Commerce Clause issue.

As to the Fourteenth Amendment vagueness issue, I have reviewed the arguments and have specifically given consideration to the recently decided cases submitted by Plaintiff.

I have concluded respectfully that this authority is distinguishable and that I am not persuaded that an error of law was committed on this issue.

Parenthetically, it should be noted that Plaintiff incorrectly observes that the opinion acknowledges that the ordinance is concededly vague. While perhaps inartfully stated, Plaintiff's apparent reference is to language suggesting that the test is not whether other individuals not in Plaintiff's position would find the statute vague but, rather, is whether the statute is vague as to one in Plaintiff's position, that of a commercial retailer of tobacco related items.

Dealing specifically with Plaintiff's newly submitted authority, the conclusion in *Bambu Sales, Inc. v. Gibson*, 474 F.Supp. 1297 (D.N.J.1979), is that the statute is over-broad not vague. The conclusion is based on the Court's finding that items are drawn within the statute based on the subjective purpose or intent of the ultimate user that "in no way inheres in the article itself". Likewise, the decision in *Weingart & Benowitz v. Town of Oyster Bay*, Docket No. 79–C–2932 (E.D.N.Y. Dec. 17, 1979), that an ordinance defining as paraphernalia that which is "primarily intended" for use with controlled substances is unconstitutionally vague rests principally on the rationale that the definition makes reference to "the seller's intent or the buyer's intent or even the manufacturer's intent." Similarly, in *N. O. R. M. L. v. Sendak*, Docket No. 75–142–C (S.D.Ind. Feb. 4, 1980), the decision of the three-judge panel in Indiana invalidating on vagueness grounds a statute defining paraphernalia as an instrument "used, designed for use or intended for use" is concerned with the issue of "designed" by whom ". . . the manufacturer . . . the shop owner . . . or the possessor."

Additionally, the court in *Bambu* did not cite any authority for the proposition that overbreadth is applicable in Fourteenth Amendment due process cases not involving First Amendment claims, and Plaintiff himself does not advance this contention.

Thus, all three opinions express concern for the subjective nature of the regulations being considered. This analysis is not in point here since the basis of the opinion is that "primarily designed for use" is an objective definition, capable of commercial understanding. "Design" has no reference to the user or to the seller. Nor does "primarily" designed or adapted have its necessary meaning in the manufacturer's *intent*; it refers rather to the principal or fundamental purpose for the article's contrivance or adaption. Thus, though a manufacturer might intend that ordinary electric clips, to cite an example now raised by Plaintiff, would be used with controlled substances, this subjective intent would not conclude the issue, which is whether the principal design of the article, as contrived or adapted, is for use with controlled substances, that is, to use the words of the court in *Bambu*, that which is "inherent" in the article itself.

That which is adapted for use subsequently by the purchaser or that which is only incidentally manufactured, sold or used in conjunction with controlled substances is not by definition "primarily designed" for such use.

The testimony presented established that there are items whose primary purpose, as designed, are for use with controlled substances and that this purpose is both known and understood by manufacturers and tobacco retailers. Indeed, the credited testimony established that the term "paraphernalia" itself is a recognized trade term for accessories sold for use with controlled substances.

The ordinance avoids the reference to *intent* which concerned both the *Bambu* court and the *Weingart* court. The ordinance does not define paraphernalia as simply items "designed" for use with controlled substances as did the Indiana statute in the *N. O. R. M. L.* case. Thus, the Novi ordinance is not defined by reference to subjective intent nor expanded to include anything designed for use. It is limited to that "primarily" designed or adapted; a standard which the Court is not persuaded is subject to the constitutional infirmities found in the cited authorities.

Having concluded, upon consideration of these authorities and upon a review of the pleadings, attachments, and briefs of the parties, that Plaintiff has failed to demonstrate manifest error of law or fact requiring the granting of the relief requested, Plaintiff's motion must be and is hereby DENIED.

IT IS SO ORDERED.