**Millie PINSKI, et al., Plaintiffs,**

**v.**

**VILLAGE OF NORRIDGE, et al., Defendants.**

**No. 81 C 6003.**

United States District Court,
N.D. Illinois, E.D.

June 29, 1982.

Bernard J. Hennessy, Schultz, Hennessy & McGarth, Robert Marc Chemers, Pretzel, Stouffer, Nolan & Rooney, Chtd., Chicago, Ill., for defendants.

Roderick F. Mollison, Chicago, Ill., for plaintiffs.

## MEMORANDUM OPINION

GRADY, District Judge.

This case comes before the court on a motion to dismiss. We review the facts as related by plaintiffs. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This is a damage action, ostensibly involving a federal question, brought by plaintiffs Millie Pinski, a member of St. John's Ukrainian Catholic Church, and Pat Gregorowicz, who provides financial support to the church. Defendants are the Village of Norridge, Medard Zabratanski, Norridge's police chief, and Joseph Sieb, its president.

For the past three years, St. John's Church sponsored a public carnival on its grounds to raise funds. The church is located on the northwest border of Chicago and the streets adjacent to the church are located in Norridge, Illinois. In each of the past three years, the Norridge Police Department has erected barricades on the streets of Norridge near the church to prevent carnival goers from parking their cars there. The police officers told carnival goers that they would receive parking tickets if they parked on the streets. During the last carnival, plaintiffs received tickets. The Norridge police barricaded the streets and issued tickets to nonresidents of Norridge who parked on the streets near the church during the carnival. The church is located on a state highway which connects with the federal interstate highway system.

In their complaint, plaintiffs claim that the Norridge police officers erected the barricades and issued tickets to carnival goers pursuant to a Norridge ordinance which forbade nonresidents from parking on certain Norridge streets. However, Amended Exhibit A to the complaint, and the affidavit appended to plaintiffs' brief, indicate that the police barricaded streets and ticketed cars parked on streets not covered by the Norridge ordinance. Therefore, we are no longer confronted with the question of the constitutionality of the ordinance.[1] The plaintiffs allege that the actions of the police violate the Civil Rights Act, 42 U.S.C. § 1983, the First Amendment and the Commerce Clause. They ask for damages, costs and an injunction restraining the defendants and their agents from interfering with their First Amendment rights.

---

1. In their complaint, plaintiffs claim that the Norridge ordinance violated the Illinois Plat Act, Ill.Rev.Stat. ch. 109 § 3, and the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments. Plaintiffs also ask for a declaratory judgment holding the ordinance unenforceable and for an injunction prohibiting defendants from enforcing the ordinance. Since plaintiffs are no longer contending that the Norridge police were acting pursuant to the ordinance, claims regarding the constitutionality of the ordinance are no longer before the court.

It is clear that in taking the actions alleged, the police were acting under color of state law within the meaning of § 1983. *See, e.g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The question, then, is whether while acting under color of state law, the Norridge police violated the First Amendment rights of the plaintiffs. The briefs of the parties and the court's own research indicate that there are few cases which address this question in a similar factual context.

■ We are not prepared to find that police action which has an almost imperceptible impact upon the free exercise of religion is a violation of § 1983. Here, we are confronted with restrictions on parking imposed by police. The parking itself has nothing to do with the exercise of religion. While parking along these streets near the church would have been convenient for plaintiffs, the Constitution does not guarantee that the exercise of religion shall be convenient. The police restrictions did not prevent access to the church. They only prevented the parking of cars in particular places. The complaint does not allege that there were no other places to park. Assuming, *arguendo,* that a total ban on parking in any place within reasonable walking distance of a church would be an interference with the right to attend church, we do not have that case here.

Moreover, plaintiffs were not affected by the parking when attending religious services. Instead, they were inconvenienced while attending carnivals held on church grounds. There are no allegations in the complaint which indicate that the carnivals were a religious activity—though presumably the profits from the carnival would support the church, and the carnival might bring the church community closer together. On these facts, we believe the relationship between the police restrictions on parking and plaintiffs' right to freely exercise their religion is too attenuated to fall within the protections afforded by the First Amendment. Therefore, we dismiss the First Amendment claims of the plaintiffs.

*Commerce Clause*

The plaintiffs claim that the defendants' actions have interfered with interstate commerce, the regulation of which is exclusively reserved to Congress. The basis for plaintiffs' claim is that the church is located on a state highway which connects with the federal interstate highway system. Although the significance plaintiffs attach to the proximity of the interstate highway does not appear from the complaint, we assume they have in mind the possibility that interstate travellers attending the church carnivals might be inconvenienced by the parking restrictions. Although the Supreme Court has broadly read the Commerce Clause in upholding Congressional regulations, *see, e.g., Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), it has also recognized that, "[w]here a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). *See Dixie Dairy Co. v. City of Chicago,* 538 F.2d 1303, 1308 (7th Cir.1976), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612.

■ In *Tobacco Road v. City of Novi,* 490 F.Supp. 537 (E.D.Mich.1980), a local ordinance regulating the sale of drug paraphernalia was challenged on Commerce Clause grounds. The court, in upholding that the ordinance applied a three-part test to reach its decision:

> [F]irst, the state or local legislation must serve a legitimate local public interest; second, it must affect interstate commerce only incidentally, and; third, if the first two tests are met, the Court must then determine whether the legitimate local purpose justifies the law's impact on interstate commerce.

We now apply this test to the facts of this case. First, it is clear that the parking

restrictions serve a legitimate local public interest. Their purpose is to promote the locality's welfare through safe, efficient use of the streets. Second, the parking restrictions do not have even an incidental impact on interstate commerce; the impact is merely speculative—there is a mere possibility that, assuming interstate travellers attend local church carnivals, they might be inconvenienced by the parking restrictions. The balance is not difficult to cast. The legitimate local purpose of promoting safe, efficient use of the streets justifies the speculative impact that the parking restrictions might have on interstate commerce. *See Proctor & Gamble Co. v. City of Chicago*, 509 F.2d 69 (7th Cir.1975), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1980). Therefore, we dismiss plaintiffs' claim under the Commerce Clause.

*Conclusion*

For the reasons stated above, we grant defendants' motion to dismiss. Since we dismiss these plaintiffs' claims, we also deny plaintiffs' pending motion for permission to amend the complaint to proceed as a class action.