The FLIPSIDE, HOFFMAN ESTATES,
INC., an Illinois Corporation,
Plaintiff-Appellant,

v.

VILLAGE OF HOFFMAN ESTATES et
al., Defendants-Appellees.

No. 80–1462.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1980.

Decided Jan. 12, 1981.

Rehearing Denied Feb. 5, 1981.

Michael L. Pritzker, Chicago, Ill., for plaintiff-appellant.

Richard N. Williams, Village Atty., Hoffman Estates, Ill., for defendants-appellees.

Before SPRECHER and WOOD, Circuit Judges, and TEMPLAR, Senior District Judge.*

SPRECHER, Circuit Judge.

This appeal involves the validity of an ordinance of the Village of Hoffman Estates, Illinois ("village") purporting to regulate merchants who sell items designed or marketed for use with illegal cannabis or drugs. Plaintiff, a Hoffman Estates record store, appeals the district court's denial of plaintiff's motion for a permanent injunction and declaratory relief.

## I

On February 20, 1978, the Village of Hoffman Estates Board of Trustees enacted Ordinance No. 969–1978, entitled "an Ordinance Amending the Municipal Code of the Village of Hoffman Estates by Providing for Regulation of Items Designed or Marketed for Use with Illegal Cannabis or Drugs," to be effective May 1, 1978. The ordinance requires that any person within the village who sells any "item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs" must obtain a license for $150.00, file affidavits averring that the applicant and each employee authorized to sell such items has never been convicted of a drug-related offense, and keep records, to be open for police inspection, of every covered item sold, along with the name and address of the purchaser. The ordinance prohibits sale to minors of any covered items. Any violation of the ordinance is punishable by a fine of not less than $10.00 nor more than $500.00, and each day that a violation continues is deemed a separate offense. In addition, the village attorney prepared "license guidelines" which define certain terms relevant to the ordinance.

Plaintiff Flipside Records ("Flipside") for more than three years prior to May 1, 1978, sold a wide variety of merchandise including smoking accessories, jewelry, novelty devices, and literature. Among these items were clamps, "alligator clips," mirrors, pipes of various types and sizes, and a large number of cigarette rolling-papers in a variety of colors. Soon after enactment of the ordinance, plaintiff was notified that Flipside appeared to be marketing items that would be covered by the ordinance. Alleging that it was unable to determine which items would be covered by the ordinance, and wishing to avoid a violation and arrest which might preclude Flipside's access to a

* Senior District Judge George Templar from the District of Kansas is sitting by designation.

federal forum for adjudication of its constitutional claims, Flipside removed from its shelves a wide variety of merchandise.[1] On May 30, 1978, Flipside initiated proceedings in the United States District Court for the Northern District of Illinois, seeking a declaratory judgment that the ordinance violated the First, Fourth, Fifth, Eighth and Fourteenth Amendments, Article I, Section 8, Clause 3 and Article I, Section 10 of the United States Constitution. Plaintiff also sought temporary, preliminary and permanent injunctive relief to restrain enforcement of Ordinance No. 969–1978, and damages pursuant to 42 U.S.C. § 1983 for the actions of the village and its agents,[2] which allegedly caused Flipside to be deprived of rights secured to it by the United States Constitution.

On May 30, 1978, Judge Leighton denied plaintiff's motion for a temporary restraining order. On September 1, 1978, a hearing on the motion for a preliminary injunction was held, and Judge Leighton denied the motion. The trial for a permanent injunction and declaratory judgment was held on March 23, 1979. On February 11, 1980, the trial court entered a Memorandum Order awarding judgment to the defendants. *Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, 485 F.Supp. 400 (N.D.

Ill.1980). Plaintiff appeals that order on several constitutional grounds, alleging that Ordinance No. 969–1978 is impermissibly vague in violation of the due process clause of the Fourteenth Amendment and violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

## II

Since this case began in the district court, and indeed, since the district court's opinion was published in February, 1980, there has been an explosion of litigation concerning so-called drug paraphernalia laws. Most of the cases involve statutes or ordinances which make the sale, manufacture, or possession of drug paraphernalia a crime, usually a misdemeanor.[3] There have been a variety of results in the district courts, even within the same district.[4] As of this writing none of these paraphernalia law cases has been decided by a court of appeals on the merits,** although in *Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980), in entering a preliminary injunction restraining enforcement of an ordinance the court flatly stated that the challenged ordinance was unconstitutionally vague on its face. 618 F.2d at 28.[5]

---

1. Larry Rosenbaum, one of Flipside's officers, consulted Richard Williams, the village attorney, about which items at Flipside would be covered by the ordinance. Williams advised Rosenbaum to use the police register for *all* items, for his protection. (Transcript of March 23, 1979 at 87–88)

2. Defendants are the village, an Illinois home rule municipality with a population of approximately 37,000; and, in their individual as well as official capacities, Virginia W. Hayter, village president; Richard Williams, village attorney; John O'Connell, village chief of police; William W. Cowin, William A. Palmer, Bruce C. Lind, Ralph H. Lyerla, Thomas W. Taylor, Lee Dodgion, village trustees.

3. In *Housworth v. Glisson*, 485 F.Supp. 29 (N.D.Ga.1978), aff'd, 614 F.2d 1295 (5th Cir. 1980), as here, there was not a criminal drug paraphernalia law at issue, but rather a licensing ordinance. In *Housworth* plaintiffs' business licenses were revoked for selling drug paraphernalia. The court found the licensing ordinance void for vagueness because it gave

plaintiffs no adequate warning of the activity which would lead to license revocation.

4. Identically worded statutes were treated differently within the same district in *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D. Mich., S.D. June 21, 1979; On Motion For New Trial, March 12, 1980) (upholding City of Novi ordinance) and *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich., S.D. April 9, 1980) (striking down city of Ferndale ordinance on vagueness grounds). In *Magnani v. City of Ames*, 493 F.Supp. 1003 (S.D.Iowa 1980), an identical ordinance also was struck down for vagueness.

** *See* note 32.

5. Also, with respect to printed matter rather than paraphernalia, the Fifth Circuit found unconstitutional a statute prohibiting sale of drug-related printed material to minors. *High Ol' Times, Inc. v. Busbee*, 621 F.2d 141 (5th Cir. 1980), *affirming*, 456 F.Supp. 1035 (N.D.Ga. 1978). While many of the above mentioned

The challenges to drug paraphernalia statutes often involve a number of constitutional claims, as here where the village ordinance is attacked on due process, equal protection, and first amendment grounds. The successful attacks usually have won on the issue of due process: drug paraphernalia statutes have been found impermissibly vague in violation of the due process clause of the Fourteenth Amendment.[6]

In August, 1979, the Drug Enforcement Administration of the United States Department of Justice published the "Model Drug Paraphernalia Act" ("Model Act"). According to the comments published with the Model Act, it was drafted to enable states and local jurisdictions to cope with the paraphernalia problem and is intended to be enacted as an amendment to the Uniform Controlled Substance Act, which has been adopted by Illinois and many other states.[7] District courts have recently upheld laws based on the Model Act, although a few have found it necessary to sever some parts.[8] These courts agree that criminal statutes, prohibiting the manufacture, sale, or possession of items determined to be drug paraphernalia, must be carefully drafted in order to focus on the drug-related intent of the person charged.[9]

## III

■ The ordinance at issue here differs from the type of statutes at issue in the above-cited cases. Hoffman Estates Ordinance No. 969–1978 does not attempt to criminalize the sale or possession of drug-related devices. In fact, the preamble to the ordinance states, "it is recognized that such items are legal retail items and that their sale cannot be banned . . . ." Yet one of the purposes of the ordinance obviously must be to do indirectly what it claims it

challenges to paraphernalia laws allege first amendment violations, none of these statutes or ordinances ban sale of literature outright.

**6.** In general, those cases striking down paraphernalia laws (1) have found the definition of "drug paraphernalia" to be too vague to give adequate notice of what is prohibited and (2) have found inadequate the degree of intent or knowledge that an item is drug-related necessary to hold a defendant criminally liable under the statute or ordinance. *See Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980); *Record Head Corp. v. Sachen*, 498 F.Supp. 88 (E.D. Wis.1980); *Hejira Corp. v. MacFarlane*, No. 80–F–824 (D.Colo. Sept. 5, 1980); *Magnani v. City of Ames*, 493 F.Supp. 1003 (S.D.Iowa July 21, 1980); *Smith v. Roark*, No. 80–2110 (S.D. W.Va. May 13, 1980); *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich. April 9, 1980); *Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J. March 5, 1980); *Indiana Chapter, N.O.R.M.L. v. Sendak*, No. TH 75–142–C (S.D.Ind. Feb. 4, 1980); *Record Museum v. Lawrence*, 481 F.Supp. 768 (D.N.J. Dec. 11, 1979). *See also, Bambu Sales, Inc. v. Gibson*, 474 F.Supp. 1297 (D.N.J. Aug. 6, 1979) (ordinance not vague, but struck down on overbreadth grounds).

**7.** The Uniform Controlled Substance Act was enacted by Illinois in 1971. Ill.Stat.Ann. ch. 56½, § 1100 *et seq.* The Justice Department's Model Act is the model for Senate Bill 1505, introduced in the Illinois legislature but not as yet finally acted upon by both houses.

**8.** *Mid-Atlantic Accessories Trade Ass'n v. Maryland*, 500 F.Supp. 834, (D.Md. 1980); *Tobacco Accessories v. Treen*, 501 F.Supp. 168, (E.D.La. 1980); *Florida Businessmen for Free Enterprise v. Florida*, 499 F.Supp. 346 (N.D.Fla. 1980) (upholding those portions of law based on Model Act, but striking sections that differ from the Model Act by punishing "possession" rather than "possession with intent to use" paraphernalia); *The Casbah, Inc. v. Thone*, No. 80–0–271 (D.Neb. Sept. 26, 1980) (ordinance constitutional after excising "reasonably should know" constructive knowledge/intent section and "legitimate supplier" evidentiary factor for determining whether an item is drug paraphernalia); *Florida Businessmen for Free Enterprise v. City of Hollywood*, No. 80–6157–Civ–NCR (S.D.Fla. Aug. 29, 1980); *Delaware Accessories Trade Ass'n v. Gebelein*, 497 F.Supp. 289 (D.Del.1980); *World Imports v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J. 1980); *Levas v. Village of Antioch*, No. 80–C–1574 (N.D.Ill. April 22, 1980) (definition of paraphernalia based on Model Act).

**9.** *See* comments to Model Act and cases cited in note 8, *supra*. Most of these cases explain that the laws upheld escape vagueness because they require defendant's specific intent or knowledge that the items in question are used with illegal drugs. A statute is not unconstitutionally vague if it embodies a specific intent to violate the law. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 342, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952); *Screws v. United States*, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945).

cannot do directly—to effectively ban the sale of a broad class of items, some of which may be used with illegal drugs. After all, few retailers are willing to brand themselves as sellers of drug paraphernalia, and few customers will buy items with the condition of signing their names and addresses to a register available to the police. But the legal issue here does not depend on the covert purpose of de facto banning certain items. Even if the ordinance does discourage the sale of some "innocent" items, the ordinance would be constitutional so long as it carefully defined the items sought to be regulated so that a person in plaintiff's position could determine whether, and to which items, the license requirement applied.[10]

■ As stated in *Geiger v. City of Eagan*, 618 F.2d 26, 28 (5th Cir. 1980), a city "clearly has the power through a properly drawn ordinance to discourage the availability of drugs and the acceptance of drug use by prohibiting the sale of drug-related devices."[11] Thus the village may, with a properly drawn ordinance, regulate drug paraphernalia. The type of regulation chosen here bears a rational relation to the village's interest in preventing drug abuse. It prevents convicted drug dealers and users from selling paraphernalia and thereby gaining contacts with a ready market, and it forbids the sale of paraphernalia to minors. But sympathetic as we are with the village's attempt to fight drug abuse through this novel licensing scheme, the village must do so in a constitutional manner.

## IV

The critical issue here is whether this ordinance is so vague as to violate the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution. In *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Supreme Court set out the policies behind the due process doctrine of vagueness. In a passage cited in virtually every opinion dealing with vagueness challenges to statutes or ordinances, the Court stated:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws often offend several important values. First, because we assume that a man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Id.* at 108–09, 92 S.Ct. at 2298–99 (footnotes omitted). *See also Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974); *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

■ This ordinance is subject to attack for vagueness despite the fact that it is an ordinance, not a statute, and it purports to license,[12] not prohibit, sale of "items designed or marketed for use with illegal cannabis or drugs." A law may run afoul of

---

**10.** *See* discussion of vagueness in Part IV of this opinion.

**11.** The court in *Geiger* went on to enter a preliminary injunction restraining enforcement of an ordinance which prohibited the "possession, sale, transfer or display for sale or transfer" of "drug related devices." While the grant of a preliminary injunction does not decide the merits, the court focused on the vagueness of the ordinance's definition of the term "drug-related device" and flatly declared "[w]e consider

the ordinance unconstitutionally vague on its face." 618 F.2d at 28.

**12.** A more typical type of vagueness challenge to a licensing statute involves an attack on the standards for denying or revoking, rather than requiring, a license. *See Housworth v. Glisson*, 485 F.Supp. 29, 36–39 (N.D.Ga.1978), *aff'd*, 614 F.2d 1295 (5th Cir. 1980). *Housworth*, like this case, involved attempted regulation of retail stores which sold items which could be used with illegal drugs. Plaintiffs' business licenses

the vagueness doctrine even though it does not impose criminal sanctions, because the fundamental defect is not the penalty but rather "the exaction of obedience to a rule or standard . . . so vague and indefinite as really to be no rule or standard at all." *A. B. Small Co. v. American Sugar Refining Co.*, 267·U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925). The lack of a criminal penalty in the ordinance does not excuse vagueness where the effect is to deprive persons of constitutional rights. *Giaccio v. Pennsylvania*, 382 U.S. 399, 402, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966) ("this state Act whether labeled 'penal' or not must meet the challenge that it is unconstitutionally vague"). *See also Bence v. Breier*, 501 F.2d 1185, 1188 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975); *Soglin v. Kauffman*, 418 F.2d 163, 166–67 (7th Cir. 1969). Furthermore, in determining whether a civil or criminal enactment is sufficiently clear that persons affected can determine what the law requires of them, the same rules of construction apply whether it is a statute or an ordinance. *Martin v. King*, 417 F.2d 458, 461 (10th Cir. 1969).

In order to analyze plaintiff's facial attack on this ordinance, we set out the entire ordinance adopted by the village, as well as the license guidelines which became an integral part of the ordinance.

Ordinance No. 969–1978

An Ordinance Amending The Municipal Code Of The Village Of Hoffman Estates By Providing For Regulation Of Items Designed Or Marketed For Use With Illegal Cannabis Or Drugs

---

Whereas, certain items designed or marketed for use with illegal drugs are being retailed within the Village of Hoffman Estates, Cook County, Illinois, and

Whereas, it is recognized that such items are legal retail items and that their sale cannot be banned, and

Whereas, there is evidence that these items are designed or marketed for use with illegal cannabis or drugs and it is in the best interests of the health, safety and welfare of the citizens of the Village of Hoffman Estates to regulate within the Village the sale of items designed or marketed for use with illegal cannabis or drugs.

· Now Therefore, Be It Ordained by the President and Board of Trustees of the Village of Hoffman Estates, Cook County, Illinois as follows:

*Section 1*: That the Hoffman Estates Municipal Code be amended by adding thereto an additional section, Section 8–7–16, which additional section shall read as follows:

Sec. 8–7–16—Items Designed Or Marketed For Use With Illegal Cannabis Or Drugs

A. License Required:

It shall be unlawful for any person or persons as principal, clerk, agent or servant to sell any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by Illinois Revised Statutes, without obtaining a license therefor. Such licenses shall be in addition to any or all other licenses held by applicant.

B. Application:

Application to sell any item, effect, paraphernalia, accessory or thing which

---

were revoked based on a local ordinance which allowed the county director of finance to revoke the license of any business found to be a "hazard to the health, safety and welfare of the citizens of the county," 485 F.Supp. at 36. The court applied the *Grayned* standards, found the ordinance unconstitutionally vague, and preliminarily enjoined enforcement against plaintiffs. *See also Aladdin's Castle, Inc. v. City of Mesquite*, 434 F.Supp. 473 (N.D.Tex.1977) (invalidating ordinance prohibiting issuance of license for coin-operated amusement center to anyone having a "connection with criminal elements").

There are obvious differences between *revoking* a license on the basis of inadequately defined conduct and *requiring* a license in order to engage in the conduct. But in both cases, because of the retailer's constitutionally protected interest in his business, the ordinance must be drawn clearly enough to warn a retailer of what the law requires.

is designed or marketed for use with illegal cannabis or drugs shall, in addition to requirements of Article 8–1, be accompanied by affidavits by applicant and each and every employee authorized to sell such items that such person has never been convicted of a drug-related offense.

C. Minors:

It shall be unlawful to sell or give items as described in Section 8–7–16A in any form to any male or female child under eighteen years of age.

D. Records:

Every licensee must keep a record of every item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs which is sold and this record shall be open to the inspection of any police officer at any time during the hours of business. Such record shall contain the name and address of the purchaser, the name and quantity of the product, the date and time of the sale, and the licensee or agent of the licensee's signature, such records shall be retained for not less than two (2) years.

E. Regulations:

The applicant shall comply with all applicable regulations of the Department of Health Services and the Police Department.

*Section 2*: That the Hoffman Estates Municipal Code be amended by adding to Sec. 8–2–1 Fees: Merchants (Products) the additional language as follows:

Items designed or marketed for use with illegal cannabis or drugs $150.00

*Section 3*: Penalty. Any person violating any provision of this ordinance shall be fined not less than ten dollars ($10.00) nor more than five hundred dollars ($500.00) for the first offense and succeeding offenses during the same calendar year, and each day that such violation shall continue shall be deemed a separate and distinct offense.

License Guidelines For Items, Effect, Paraphernalia Accessory Or Thing Which Is Designed Or Marketed For Use With Illegal Cannabis Or Drugs

Paper—white paper or tobacco oriented paper not necessarily designed for use with illegal cannabis or drugs may be displayed. Other paper of colorful design, names oriented for use with illegal cannabis or drugs and displayed are covered.

Roach Clips—designed for use with illegal cannabis or drugs and therefore covered.

Pipes—if displayed away from the proximity of nonwhite paper or tobacco oriented paper, and not displayed within proximity of roach clips, or literature encouraging illegal use of cannabis or illegal drugs are not covered; otherwise, covered.

Paraphernalia—if displayed with roach clips or literature encouraging illegal use of cannabis or illegal drugs it is covered.

■ As noted above, in order to survive a vagueness attack, an ordinance must give persons a reasonably clear idea of what the law expects of them. We agree with the district court that "[i]t is obvious that this ordinance is not a model of legislative clarity; defendants do not claim that it is." 485 F.Supp. at 406. Of course, in determining whether a statute or ordinance is vague, a court cannot invalidate every ordinance which could have been drafted more precisely, since "[i]n most English words and phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 1437 (1945). But the inherent vagueness of the English language, coupled with the admirable intention of stemming drug abuse, cannot save an ordinance which fails to give fair notice of what it prohibits.

■ According to the district court, the plaintiff should be able to tell what the ordinance requires of it by looking to the common, ordinary, dictionary meanings of the words "items", "effect", "parapherna-

lia", "accessory", and "thing".[13] But the fact that these five words have ordinary dictionary meanings does not sufficiently clarify the scope of the licensing requirement, which applies to any person who sells any "items, effect, paraphernalia, accessory or thing *which is designed or marketed for use with illegal cannabis or drugs.*" The italicized phrase is the key to triggering application of the statute. The words "designed", "marketed", "cannabis", and "drugs" may also have common, ordinary meanings which can be found in a dictionary, but the entire phrase is more than the sum of the meanings of the individual terms used. Unless the license guidelines give additional clarity to this phrase, we must agree with plaintiff that the ordinance is so vague that it does not give sufficient notice to merchants as to whether they are required to obtain a license, and for which items the name and address of the purchaser must be recorded and sale to minors prohibited.

Turning first to the words of the ordinance, the primary words to be interpreted are "designed" and "marketed", since these words link the innocuous terms "item", "effect", "paraphernalia",[14] "accessory", and "thing" to illegal drugs, thereby triggering the regulatory purpose.[15] The phrase "designed for use with drugs" was held to be one of the fatal flaws, in an ordinance far more detailed than the one at issue here, by a three-judge district court in Indiana. In *Indiana Chapter, N.O.R.M.L. v. Sendak*, No. TH 75–142–C (S.D.Ind. Feb. 4, 1980) (Swygert, Cir. J. presiding)[16] the court stated:

> It is unclear what is meant by an instrument "designed" for drug use. The term "designed" could signify only devices that have no use or function other than as a means to ingest a controlled substance. Alternatively, "designed" could include any devices that have a legitimate function but could be used for ingestion of drugs. That is, the term "designed" could sweep into the definition of paraphernalia any device that could be altered from its normal function to become a makeshift drug device, such as a paper clip, tie bar, hand mirror, spoon, or piece of aluminum foil. The definition "designed for drug use" gives no hint to those attempting to comply with [the ordinance] what is included in the definition. The definition fails to make clear what items are included in the statutory prohibition and what items are not.

*Id.*, slip op. at 12–13.

The license guidelines imply that items "designed" for use with drugs mean those

---

**13.** The district court noted that plaintiff removed a total of 72 items from its shelves, and that thereafter defendants conceded that plaintiffs were in compliance with the ordinance because they no longer sold any "... thing which is designed or marketed for use with illegal cannabis or drugs." 485 F.Supp. at 407. The court stated that the removal of these items by plaintiffs demonstrates that "plaintiff was not hampered by any vagueness in the words of the subject ordinance." *Id.* Plaintiff vigorously denies that its actions represent any acknowledgment that it sold drug-related paraphernalia. Rather, a wide variety of items were removed from the shelves in order to ensure that no violation of the ordinance could be found. Plaintiff wished to avoid the initiation of local proceedings that might cause a federal court to abstain from considering plaintiff's constitutional claims until all state remedies had been exhausted. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed:2d 669 (1971).

**14.** The district court treated the term "paraphernalia" in the ordinance as having its non-technical meaning, namely "articles of equipment." 485 F.Supp. at 407, citing Webster's Third New International Dictionary (Unabridged ed. 1971) at 1638. But "paraphernalia" is also becoming a standard term to refer to the whole class of allegedly drug-related items which this ordinance attempts to regulate.

**15.** The purpose of the regulation is found in the preamble of Ordinance No. 969–1978, which provides in part, "it is in the best interest of the health, safety, and welfare of the citizens of the Village of Hoffman Estates to regulate within the Village the sale of items designed or marketed for use with illegal cannabis or drugs."

**16.** On appeal to this court the case was declared moot and remanded for dismissal because the Indiana Legislature had repealed the statute held to be unconstitutional, and the successor statute was the subject of new litigation. *Indiana Chapter, N.O.R.M.L. v. Sendak*, No. 80–1305 (7th Cir. July 22, 1980).

items which are inherently suited only for drug use, and are thus covered by the ordinance regardless of the manner of display or avowed intent of the retailer. For example, the guidelines state that "roach clips" are *designed for use with illegal cannabis or drugs and therefore covered*," (emphasis added). But the guidelines do not define "roach clip." Consequently, stocking any item that could possibly be used as a roach clip, such as an alligator clip or bobby pin, could subject a retailer to the licensing requirement. In reality, it is inconceivable that sale of these innocent items would subject a hardware store or drugstore to the burdens of the license fee and sales register, as well as to the label of "drug paraphernalia store." Perhaps the village wishes to draw a line between items which inherently *are* roach clips and "innocent" items merely *used* as roach clips. But neither the ordinance nor the guidelines draws this distinction, and we are uncertain as to whether any definition of a roach clip could draw such a distinction based on design alone.[17]

Another item which the guidelines say is inherently drug related is "paper of colorful design, names oriented for use with illegal cannabis or drugs and displayed." But the guidelines also say that "white paper or tobacco oriented paper not necessarily designed for use with illegal cannabis or drugs may be displayed." This guideline attempts to tell the retailer which rolling papers are covered and which are not, but the definition is circular because it puts the burden back on the retailer to decide what is "tobacco oriented" paper not necessarily *designed* for use with drugs and what is "drug oriented" paper. Is all white rolling paper outside the ordinance, even if there is an advertisement for a water pipe on the package? Does "paper of colorful design" mean that brown or beige paper is covered, or could some colored paper be considered "tobacco oriented"?

An additional element of vagueness in the "designed for use with drugs" standard is added by the fact that the manufacturer, not the retailer, designs the items sold. Consequently, the design intent of the manufacturer, not of the regulated seller, triggers the retailer's duty to obtain a license and the customer's obligation to sign a register available to the police.[18]

Next, we examine the phrase "*marketed . . . for use with illegal cannabis or drugs*" to determine whether the vagueness already noted can be eliminated. Defendants argue that the ordinance's reference to the *marketing* approach used by a retailer makes possible an inference about the seller's intent to sell a given item for use with illegal drugs.[19] Defendants argue that pre-

17. The following exchange took place at the March 23, 1979, trial during plaintiff's questioning of Williams, the village attorney who drafted the ordinance and guidelines:

By Mr. Leavitt:
Q What design differential between the alligator clip displayed in Exhibit No. 6 and the alligator clip displayed in No. 80?
A The design and marketing of the—
Q I asked only about design. Is there any design differential?
A No.
Q Now if I were to tell you that Exhibit No. 6 was sold in a Flipside Records without any signs but merely there where literature was displayed, where the literature that contained, The Child's Garden of Marijuana or whatever other literature they displayed, would it then be a regulated item?
A It would be if an officer could tell me that it can be used or is presumed to be used for illegal cannabis or drugs.
Transcript of March 23, 1979 at 77–78.

18. If this were a criminal ordinance, subjecting retailers and customers to prosecution based solely on the design intent of a third party, the manufacturer, there would be little question as to the law's invalidity. *See* note 9, *supra*.

19. The following exchange took place during plaintiff's examination of Williams:

Q Does your ordinance contemplate control or regulation of those things which you have defined in the guidelines under your words as "roach clips"?
A The ordinance regulates paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs. It does not specifically state roach clips.
Q I was referring to the guidelines which specifically says—
A Those that are designed for use with illegal cannabis and drugs are therefore covered.
Q What I am asking is how do you know what you are selling is a roach clip? The

suming that an item is intended for use with drugs from a retailer's marketing approach satisfies the test for the validity of a statutory presumption, specifically that "there be a rational connection between the facts proved and the fact presumed." *Leary v. United States*, 395 U.S. 6, 33, 89 S.Ct. 1532, 1546, 23 L.Ed.2d 57 (1969), quoting *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943). Defendants' reliance on *Leary* is misplaced. In *Leary* the Court struck down a presumption that a person in possession of marijuana knows that the marijuana is of foreign origin.[20] The court held that despite the fact that most domestically consumed marijuana comes from abroad, 395 U.S. at 39–44, 89 S.Ct. at 1549, 1552, "it would be no more than speculation were we to say that even as much as a majority of possessors 'knew' the source of their marijuana." 395 U.S. at 53, 89 S.Ct. at 1557. The issue in *Leary* was whether the "fact proved," (marijuana possession), and "fact presumed," (knowledge of importation), were rationally connected. But the issue here is whether the "fact proved," (marketing scheme), is too vague a standard to give rise to the "fact presumed," (drug-relatedness).[21] This vagueness issue is quite different from the "rational connection" issue in *Leary*.

The license guidelines purport to define the type of marketing approach that is indicative of the sale of items for use in conjunction with illegal drugs. For example, the guidelines indicate that ordinary pipes can be distinguished from drug-related pipes according to the pipes' proximity to nonwhite paper, roach clips, or literature encouraging illegal use of cannabis or drugs.[22] Similarly, "paraphernalia" is covered "if displayed with roach clips or literature encouraging illegal use of cannabis or illegal drugs." The word "paraphernalia" is nowhere defined, but, as discussed earlier, the district court found that the word should be given its ordinary meaning of "articles of equipment." Thus, it appears that displaying almost any item in the proximity[23] of "literature encouraging illegal use of ... drugs" requires the store to obtain a license and have purchasers sign the register. This means that paper clips sold next to *Rolling Stone* magazine conceivably could trigger the requirements of

---

design you have agreed is the same. How does the individual, without the benefit of a policeman monitoring each and every item he sells, know whether or not it is a glove stretcher or a roach clip?

A This is where the marketing concept enters in.

Transcript of March 23, 1979 at 78–79.

20. Leary was convicted of violating 26 U.S.C. § 176a, which provided in relevant part:

Notwithstanding any other provision of law, whoever, *knowingly*, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, *knowing the same to have been imported or brought into the United States contrary to law*, or whoever conspires to do any of the foregoing acts, shall be imprisoned....

Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, *such possession shall be deemed sufficient evidence to authorize conviction* unless the defendant explains his possession to the satisfaction of the jury.

395 U.S. at 10, 89 S.Ct. at 1534 (emphasis added).

21. Since we find that defendants have not adequately defined their "marketing concept" so as to give retailers fair notice of what the licensing ordinance requires of them, we do not reach the issue of whether, or what kind of, marketing factors can give rise to a presumption of intent for use with drugs.

22. The guidelines state in part:

Pipes—if displayed away from nonwhite paper or *tobacco oriented* paper, ... are not covered;

(emphasis added). We assume that the guidelines mean that pipes are not covered if displayed away from *non*-tobacco oriented paper. This would be consistent with the guidelines on paper. However, read literally, the guidelines imply that pipes are "covered" if displayed near tobacco oriented paper, yet not covered if displayed only near white paper, even if it is white paper with "names oriented for use with illegal cannabis ...."

23. The guidelines do not define "proximity".

the ordinance. Perhaps the village would not construe the ordinance in this manner. But the point is that there is no way for a seller to determine which particular items or arrangement of merchandise will require a license.

Defendants argue that the phrase "items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs" adequately defines that has become known as drug paraphernalia,[24] so that a retailer in plaintiff's position can determine whether the ordinance applies to him. Defendants cite *McGowan v. Maryland*, 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961), for the proposition that when a regulatory ordinance applies to a *retailer*, who has an opportunity for clarification prior to license application, problems of interpretation which might confuse ordinary citizens do not arise. In *McGowan*, which involved a statute that exempted from Sunday closing laws retail sales of "merchandise essential to, or customarily sold at, or incidental to, the operation of" bathing beaches and amusement parks, the Court stated:

> We believe that *business people* of ordinary intelligence in the position of appellant's employer would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county.

366 U.S. at 428, 81 S.Ct. at 1106 (emphasis added).

Despite the fact that "[i]n the field of regulatory statutes governing business activities where the acts limited are in a narrow category, greater leeway is allowed," *Papachristou v. City of Jacksonville*, 405

U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), this ordinance fails to satisfy the principles behind the vagueness doctrine. The greater leeway allowed when an ordinance is applied to a retailer, who supposedly is familiar with his industry, does not fit this case. The *McGowan* standard allows "ordinary commercial knowledge" or "reasonable investigation" to clarify the standards of an ordinance.[25] But to apply the *McGowan* analysis here would beg the question in issue. To apply that standard as defendants suggest would presuppose that the business the retailers are engaged in is the business of selling items "designed or marketed for use with illegal cannabis or drugs." The plaintiff vigorously contests that characterization of its business.

A further element of vagueness in the marketing concept arises from the danger of arbitrary and discriminatory enforcement by those charged with enforcement of the ordinance. *See Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99. Since, as discussed above, the ordinance and guidelines are vague as to what constitutes items designed for use with illegal drugs, the ordinance is equally vague as to which supposedly designed-for-drug items will bring other items under the ordinance through the marketing proximity standard. If an item is not considered drug-related *per se*, then the subjective factors that enter into interpreting a retailer's marketing scheme make possible the dangers noted in *Housworth v. Glisson*, 485 F.Supp. at 38 (N.D.Ga.1978), *aff'd*, 614 F.2d 1295 (5th Cir. 1980):

> Most people may agree that selling devices which have no obvious purpose other than to facilitate the use of dangerous drugs threatens the community's health, welfare and safety. But the decision of which devices fit this category becomes

---

24. *See* note 14, *supra*.

25. In *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D.Mich.1980), a retailer was held to a higher standard of knowledge of paraphernalia than others, based on the passage from *McGowan* cited *supra*, and the court found that the ordinance was not vague as applied to retailers. 490 F.Supp. at 545–48. But an identical ordinance enacted in the city

of Ferndale was later struck down in the same district in *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich.1980). In *Music Stop* the *McGowan* standard was also cited, and the court concluded that even if it imposed *McGowan's* "reasonable investigation" requirement on retailers, the ordinance was impermissibly vague. 488 F.Supp. at 393.

more difficult when something as innocuous and susceptible of legal or merely decorative use as a "marijuana pipe" is involved. Whether selling this merchandise falls within the ordinance's prohibition is a debatable question, *particularly when conflicting lifestyles and political views suffuse the decision maker's perception of what buyers will do with the product.*

(Emphasis added).

We find that there does exist a genuine danger that enforcement of this ordinance will be used to harass individuals choosing lifestyles and views different from those of the majority culture. Defendants may argue that "conflicting lifestyles and political views" will not affect enforcement of the ordinance, but defendants already demonstrate a certain bias when they state in their brief "[d]efendant Village does expect that the marketing approach that encourages drug use by youth will be eliminated by responsible businesses and conducted under reasonable regulation by other businesses." Appellees' Brief at 11. Defendants obviously have concluded that no business which must be licensed under the ordinance is a "responsible business." Thus the ordinance is not, as the village argues, the same as the village's regulation of milk, flowers, and other activities requiring a license. Rather, the ordinance brands licensees as irresponsible businesses, a stigma which should not be applied according to the tastes of village officials who may be offended by a retailer's marketing approach. Thus, with regard to both the design and marketing standards, the ordinance "impermissibly delegates basic policy matters to [those charged with administering the ordinance] for resolution on an ad hoc and subjective basis." *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99.[26]

Another aspect of the ordinance which creates the danger of arbitrary enforcement, as well as failing to notify retailers of what the law expects of them, is Section 1(D) of the ordinance which provides:

Every licensee must keep a record of every item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs which is sold and this record shall be open to the inspection of any police officer at any time during the hours of business. Such record shall contain the name and address of the purchaser, the name and quantity of the product, the date and time of the sale, and the licensee or agent of the licensee's signature, such records shall be retained for not less than two (2) years.

Defendants argue that this record-keeping requirement is supported by Illinois Revised Code ch. 56½, Section 1312, which requires that purchasers sign for Schedule V controlled substances.[27] But since possession or distribution of Schedule V substances is in itself illegal, except as authorized for medical purposes,[28] the Section 1312 register serves to detect illegal, non-medical use by purchasers or pharmacists. In the ordinance before us, however, the items to be regulated are, according to the ordinance itself, "legal retail items," unlike Schedule V substances. Nevertheless, the record-keeping section implies that a customer who purchases an item "designed or marketed for use with illegal cannabis or drugs" intends to *use* the item with illegal cannabis or drugs. A further implication could be that a customer is subject to police scrutiny or even to a search warrant on the basis of the purchase of a legal item.

The potential for abuse in inferring use or possession of drugs from purchase or

---

**26.** The possibility that the enforcement standards may be clarified in the future by proceedings under the village's Administrative Procedures Ordinance does not cure the vagueness found here. *See* discussion in Part V of this opinion.

**27.** Schedule V substances affected by Section 1312 include codeine, dihidrocodeine, and

ethylmorphine. *See* ch. 56½, § 1212. There is no vagueness in the definition of these substances, unlike the definitions of the items to be regulated in the village's ordinance.

**28.** *See* Ill.Rev.Stat. ch. 56½, §§ 1401, 1402, 1406.

possession of certain items was noted by the Eighth Circuit in *Geiger v. City of Egan*, 618 F.2d 26 (8th Cir. 1980). In *Geiger*, the court struck down a statute which made possession of a "drug-related device" a misdemeanor. The court stated:

> Where definite guidelines for enforcement officials are not present, use of the ordinance to expand arrest opportunities and justify searches magnifies the potential harm from enforcement of the ordinance.

618 F.2d at 29 (footnote omitted). The danger here is similar to the danger in *Geiger*. Here the danger of abuse arises from use of the police register, while in *Geiger* the danger arose from use of an arrest for possession of drug-related items as a basis for a search for controlled substances. While the ordinance here does not make purchase of drug-related devices a criminal offense, the underlying problem of

potential enforcement abuse arising from the registration requirement remains.[29]

## V

Finally, defendants contend that the "licensing guidelines" represent only a beginning in clarifying what are "items, . . . designed or marketed for use with illegal cannabis or drugs." Defendants point to the village's Administrative Procedures Ordinance, No. 932–1977, which provides procedures for rule-making, including provisions for public comment on proposed rules, petition for adoption of new rules, and appeal of the adoption, amendment, or repeal of rules.[30] Presumably speaking of rules the village may adopt in the future pursuant to its Administrative Procedures Ordinance, defendants state, "[w]hile speculative, it is likely the guidelines in the Model Act . . . would be used to identify the de-

---

29. On May 29, 1979, the parties entered a stipulation which provided in part:

> The primary purpose of that part of the challenged Ordinance, which requires that merchants maintain a police register or record of purchasers, of those items sought to be regulated, is to discourage persons in the Hoffman Estates community from purchasing those items. That the requirement that all purchasers of items sought to be regulated sign a police record, open to police inspection, serves to discourage customers, much the same way that requiring patrons of a motel to sign a guest register discourages certain persons from using the services of that type of establishment.

While the primary purpose of the registration requirement may well be to discourage purchase of certain items, we are not convinced that the danger of unjustified searches and arrests noted in *Geiger* is not present here.

30. The relevant sections of the Administrative Procedures Ordinance deal with the procedures for rule-making, petition for adoption of rules, and appeal, and are set out as follows:

> Sec. 5–8–4—Procedure for rule-making:
> (A) Prior to the adoption, amendment or repeal of any rule, each Department shall:
> (1) Give at least 10 days' notice of its intended action. The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and the time, place and manner in which interested persons may present their views concerning the intended action. The notice shall be mailed to each

person who has made timely request of the Department for advance notice of its rule-making proceedings.
(2) Afford all interested persons reasonable opportunity to submit data, views or arguments, which may, in the discretion of the Department be submitted either orally or in writing or both. The Department shall consider fully all submissions respecting the proposed rule.

> . . . . .

> Sec. 5–8–6—Petition for adoption of rules: Any interested person may petition a Department requesting the promulgation, amendment or repeal of a rule. Each Department shall prescribe by rule the form for petitions and the procedure for their submission, consideration and disposition. If, within 30 days after submission of a petition, the Department has not initiated rule-making proceedings in accordance with Section 5–8–4 of this Article, the petition shall be deemed to have been denied.

> Sec. 5–8–7—Appeals: Any person aggrieved by the adoption, amendment or repeal of any rule under the procedures herein may request that the Village Manager place the issue before the appropriate committee of the Village Board. There shall be an opportunity for the aggrieved person or persons and the Department to present the merits of the issue before the Committee. The Committee shall make a recommendation to the Village Board. The Village Board shall resolve the issue by Resolution or Ordinance, as appropriate.

sign and marketing intent."[31] Appellees' Br. at 7. But the mere possibility that the vagueness in this ordinance might later be corrected by additional guidelines certainly cannot be a sound basis for holding it constitutional.

As discussed in Part IV, this ordinance is impermissibly vague on its face. Therefore, it does not provide an administrative body with adequate standards to guide and limit the administrators' discretion in drawing guidelines. "Further, where, as here, a rule contains no ascertainable standards for enforcement, administrative and judicial review can be only a meaningless gesture." *Bence v. Breier*, 501 F.2d 1185, 1190 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975). In addition, the possibility that plaintiff itself may appeal or propose new guidelines under the Administrative Procedures Ordinance does not shift the burden to plaintiff to ensure that the village adopts rules with ascertainable standards.

As stated in *Grayned*, "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." 408 U.S. at 108, 92 S.Ct. at 2298. This ordinance and the existing guidelines fail to adequately define the items to be regulated, and thus a retailer in plaintiff's position is unable to determine what the law expects of him. Thus, this ordinance must be declared void for vagueness.[32] Since we find this ordinance void for vagueness, it is unnecessary to reach plaintiff's other constitutional claims, and we express no opinion on them.

The order of the district court is

Reversed.

---

**31.** As discussed in Part II, the Model Act is a criminal statute. In addition to providing guidelines for determining whether an object is drug paraphernalia, the Model Act requires proof of intent or knowledge by a seller that an item will be used as drug paraphernalia. Furthermore, while the Model Act has been approved by some courts, its constitutionality is not before this court.

---

**32.** After this opinion was written, but before it was released, the Sixth Circuit issued its opinion in *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916 (6th Cir. 1980). The Sixth Circuit held three ordinances based on the Model Act to be unconstitutional. That opinion, like our opinion here, found the "designed for use" standard unconstitutionally vague.